**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**NATHAN TAYLOR,**

        **Petitioner,**

**v.**                                **Civil Action No. 5:07cr8**
                                          **Criminal Action No. 5:10cv2**

**UNITED STATES OF AMERICA,**        **(Judge Stamp)**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On January 4, 2010, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody with a memorandum in support. (Dkt.# 96). On January 5, 2010, the Government was ordered to respond (Dkt.# 101), and did so on February 4, 2010. (Dkt.# 105). Petitioner did not file a reply. However, on October 20, 2010, petitioner filed a Motion to Amend and Supplement Informal Brief Pursuant to Fed. R. Civ. Pro. 15(a) (Dkt.# 110), which was granted by Order entered on October 26, 2010. (Dkt.# 112). The Government filed its response on November 9, 2010. (Dkt.# 114).

### II. Facts

**A.**    **Conviction and Sentence**

On May 7, 2007, petitioner signed a plea agreement by which he agreed to plead guilty to Count 1, felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). Petitioner also waived his right to an appeal and to collaterally attack his sentence. Specifically, the Petitioner's plea agreement contained the following language regarding his waiver:

10.  Mr. Taylor is aware that Title 18, United States Code, Section 3742 affords a

defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal the sentence or challenge the sentence (or the manner in which it was determined) in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255 with the following exception:

> a. If this Court determines that defendant is subject to the provisions of Title 18 USC [sic] Section 924(e)(1) (Armed Career Criminal), defendant reserves the right to challenge such a finding and the resulting sentence through an appeal.

The United States waives the right to appeal the sentence of Mr. Taylor if the actual term of imprisonment imposed is 92 months or greater. Both parties have the right during any appeal or collateral attack to argue in support of the sentence.

(Dkt.# 56, ¶10 at 4).

On May 14, 2007, Petitioner entered his plea in open court. Petitioner was 53 years old, and attended school up till the 12th grade.[1] (Dkt.# 102 at 4). The Court specifically asked Petitioner if he understood the waiver of his appellate and post-conviction relief rights and Petitioner said "[y]es." (Id. at 12 and 19). However, the court advised petitioner that he waived his right to seek post conviction relief, except for claims of ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose. Further, the Court explained that pursuant to the exception to his waiver set forth in ¶10(a), he also retained the right to appeal and raise post-conviction collateral relief rights as to the issue of his potential determination as an Armed Career Criminal ("ACC") and its mandatory minimum sentence. (Id.). The Court asked counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights. Counsel provided an extensive, detailed recapitulation of the time he had spent with petitioner explaining the plea agreement and its waivers, and advised the Court that he

---

[1] Petitioner's Pre-Sentence Investigation Report ("PSR") indicates that he left school during the 12th grade and did not graduate. (Dkt.# 71, ¶ 71 at 18).

was confident that petitioner did understand them. (<u>Id</u>. at 13 - 15).  The Court then reviewed all the rights petitioner was giving up by pleading guilty. (<u>Id</u>. at 19 - 22).  During the plea hearing, the Government presented the testimony of James E. Sirbaugh, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, to establish a factual basis for the plea. (<u>Id</u>. at 24 - 27).  The Petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, the Petitioner advised the Court that he was guilty of Count One of the indictment. (<u>Id</u>. at 28).  The Petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (<u>Id</u>.).  In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (<u>Id</u>.).  The Petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (<u>Id</u>. at 29).  Finally, Petitioner said he was in fact guilty of the crime to which he was pleading guilty.  (<u>Id</u>.).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the Petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt.  (<u>Id</u>. at 29 - 30).  The Petitioner did not object to the Court's finding.

On August 9, 2007, Petitioner appeared before the Court for sentencing.  After numerous objections were addressed and extensive oral argument was had, the Court announced its tentative findings.  Petitioner was found to have a total offense level of 30, with a base offense level of 33 because he was determined to be an Armed Career Criminal pursuant to 4B1.4, less two levels for acceptance of responsibility, and a third level for timely acceptance upon motion of the Government.  His criminal history category was IV, based upon 6 criminal history points and the criminal history

category guidelines for an Armed Career Criminal pursuant to Guideline 41.4(C), giving him a term of imprisonment of 135 to 168 months. However, as an Armed Career Criminal, he was subject to a mandatory minimum of 15 years imprisonment, with a term of three to five years' supervised release. No departure from the guidelines was warranted because of the ACC finding, and no variance was warranted under Fourth Circuit law. (Dkt.# 85 at 45 - 46). Neither party objected to the tentative findings. Petitioner declined the opportunity to allocute. Defense counsel asked the Court to consider incarcerating petitioner close to his home town of Youngstown, Ohio, and because of his age, recommend his placement within the aging population. Further, counsel asked the Court to recommend petitioner for the drug and alcohol treatment with the B.O.P. (Id. at 47 - 48). The Government did not object, and noted that if it had not been for the ACC finding, it would have recommended the lower end of the guideline range. However, because the ACC finding controlled, the Government recommended the mandatory minimum as a sufficient sentence. (Id. at 48).

Taking all necessary information into consideration, the Court sentenced petitioner to serve a total term of 180 months, the statutory minimum term of imprisonment, to be followed by a term of five years supervised release. (Id. at 49). Forfeiture of the firearm and ammunition petitioner was arrested with was ordered administratively. (Id. at 51). Petitioner was recommended for the 500-hour residential drug treatment program within the B.O.P. (Id. at 52). The Court advised petitioner that because the waiver of his appellate and post-conviction relief rights contained an exception permitting him to challenge a potential ACC finding and any concomitant sentence, and was further subject to the exceptions explained at his plea hearing, he had retained those rights insofar as they fell within the exceptions. (Id. at 53).

**B.**     **Direct Appeal**

On August 20, 2007, petitioner filed a Notice of Appeal. (Dkt.# 75). On appeal, petitioner contended that the District Court erred in sentencing him as an Armed Career Criminal, contesting the Court's consideration of his Ohio state escape conviction as a predicate conviction under the Armed Career Criminal Act ("ACCA"). He further challenged the District Court's consideration of his two armed robbery convictions as separate offenses, arguing that they should have been considered to be a single criminal episode.

On September 4, 2008, the judgment of the district court was affirmed by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 94). Mandate issued on September 26, 2008. (Dkt.# 95). Petitioner filed a petition for a writ of *certiorari* with the United States Supreme Court, which was denied on January 20, 2009. (4th Cir. Dkt. # 54) (07-4808).

**C.    Federal Habeas Corpus**

**1.    Petitioners' Contentions (Dkt.# 96)**

In his federal habeas petition and supporting memorandum of law, petitioner raises multiple issues for relief, reordered here for clarity and expediency:

1) The District Court erred in admitting the firearm into evidence, because it was obtained in an unconstitutional automobile stop.

2) The evidence was insufficient to convict him of possessing a firearm.

3) He only pled guilty because of the Government's oral promise to permit him to enter a conditional plea, permitting later appeal of the suppression issue.

4) His plea was not knowing and voluntary, because the District Court did not adequately advise him of the mandatory minimum sentence he faced as an Armed Career Criminal.

5) Counsel's pre-trial preparation was inadequate, because he:

a) failed to adequately investigate the facts, including Government's evidence and statements of co-defendants;

b) failed to consult extensively with petitioner;

c) did not investigate potential defenses;

d) failed to reserve the right to appeal the District Court's adverse ruling on petitioner's suppression motion; and

e) lied to petitioner to get him to plead guilty, by promising him a sentence of only 57 - 71 months.

6) Counsel had a conflict of interest.

Petitioner alleges that he did not raise any of the ineffective assistance of counsel issues on appeal "because [my] lawyer would not raise ineffective assistance of counsel on himself. (Dkt.# 96 at 4).

As relief, he requests that the Court grant him motion and vacate the judgment against him.

**2.**   **Government's Response (Dkt.# 105)**

1) Petitioner's IAC claims are defeated by his sworn testimony during his Rule 11 hearing.

2) Petitioner, in pleading guilty, waived his right to further challenge the traffic stop and evidence arising from it.

3) By pleading guilty, petitioner also waived the right to contest the sufficiency of the evidence.

4) Petitioner's claims that his guilty plea was not voluntary because he was promised a specific sentence and that the trial court failed to advise him of the mandatory minimum sentence are completely without merit.

**3.**   **Petitioner's Amended Motion and Supplemental Informal Brief Pursuant to Fed. R. Civ. Pro. 15(a) (Dkt.# 110)**

Petitioner reiterates the claims previously made in his § 2255 motion, providing additional case law in support.

**4.**   **Government's Response to Petitioner's Amended Motion (Dkt.# 114)**

Petitioner's claims, already raised in his original motion, have no merit. Petitioner already

litigated the legality of the traffic stop and subsequent search of the vehicle where the firearm was discovered, and did not preserve the right to appeal this issue when he knowingly entered his plea. He only preserved the right to appeal the potential determination that he was a career offender and the fifteen-year mandatory minimum sentence associated with it. As such, this undermines his claim here that he was not aware that the entry of a plea waived his right to further raise the suppression issue on appeal or in the instant proceeding.

## III. <u>Analysis</u>

### A. <u>Petitioner's Burden of Proof</u>

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### B. <u>Waiver</u>

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." <u>Blackledge v. Allison</u>, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." <u>Id</u>. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir. 2005).

In <u>United States v. Attar</u>, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a

waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver if the facts giving rise to the claims occurred prior to the defendant entering his guilty

plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver.

Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> [t]he validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the

presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. <u>Attar</u>, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In <u>Braxton v. United States</u>, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. <u>Braxton</u> at 502 (citing <u>United States v. Cannady</u>, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); <u>Butler v. United States</u>, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> [a]ppellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in <u>Attar</u> applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' <u>United States v. White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 102 at 16). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in exchange for some of the concessions by the Government, he was waiving his right to appeal his sentence or to collaterally attack the legality of the guilty plea and sentence, as long as it was within the maximum sentence of fifteen years to life, if he were determined to be an Armed Career Criminal, and ten years to life, if he were not so determined. (Id. at 16). He was ultimately determined to be an Armed Career Criminal, and received a sentence of 180 months, or 15 years imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his conviction and sentence by filing this §

2255 motion, except for claims of ineffective assistance of counsel; sentence above a statutory maximum; sentence for an unconstitutionally impermissible purpose; and to raise a challenge to his ACC determination and its mandatory minimum sentence.  Thus, a review of petitioner's claims[2] enumerated herein as Grounds One, Two, Three, Four is precluded.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent that petitioner has also raised ineffective assistance of counsel claims, those are excepted from his waiver and thus they will be given review.

## C.     <u>Ineffective Assistance of Counsel</u>

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688.  The second prong requires the petitioner to show that the deficient performance prejudiced the defense.  <u>Id.</u> at 687.  In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry

---

[2] Petitioner's Ground One, Two, Three and Four claims are that the District Court erred in admitting the firearm into evidence, because it was obtained in an unconstitutional automobile stop; the evidence was insufficient to convict him of possessing a firearm; he only pled guilty because the Government orally promise to permit him to enter a conditional plea so that he could later appeal the suppression issue; and his plea was not knowing and voluntary, because the District Court did not adequately advise him of the mandatory minimum sentence he faced as an Armed Career Criminal.

of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985).

In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

<u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475

(4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90.

Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v.</u>

<u>Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a

particular case and at the time of counsel's conduct).

1.      <u>Ground Five (a), (b), (c), (d) and (e): The Adequacy of Counsel's Pre-Trial Preparation</u>

Petitioner's claims of counsel's ineffectiveness in pre-trial preparation are interrelated and

will be addressed together for expediency. Petitioner contends that counsel failed to adequately

investigate the facts, including Government's evidence and the statements of co-defendants.

Further, he alleges, counsel failed to "consult extensively" with him; did not investigate potential

defenses; failed to reserve the right to appeal the District Court's adverse ruling on his suppression

motion; and lied to him about the length of sentence he would receive, in order to get him to plead

guilty.

Defense counsel has a duty to conduct a pretrial investigation that is "[reasonable] under

prevailing professional norms." <u>Strickland</u>, 466 U.S. 668, 688 (1984). A decision not to investigate

"must be directly assessed for reasonableness in all the circumstances, applying a heavy measure

of deference to counsel's judgments." Id. at 691; see also Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003). Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). "In considering claims of ineffective assistance of counsel, we address not what is prudent or inappropriate, but only what is constitutionally compelled." Burger v. Kemp, 483 U.S.776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)) (internal quotations omitted). In reviewing the deficiency prong in claims of ineffective assistance of counsel, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90.

In Ground Five (a) and (b), Petitioner claims that counsel failed to consult extensively with him and investigate and evaluate the Government's evidence and co-defendants' statements "to ensure that the nature of the offense would prove the petitioners [sic] innocence, but counsel was unable to preform [sic] any of the task [sic] required of him." (Dkt. 91-1 at 3). Specifically, Petitioner alleges that counsel failed to interview or object to allegedly contradictory statements made by co-defendants. He points to various purported discrepancies in the statements, referring to them in three attached exhibits. However, he attached only two of the referenced exhibits.[3]

The Court finds Petitioner's allegations do not warrant relief because Petitioner has failed to show his counsel's conduct was deficient or prejudicial. Petitioner claims that counsel was

---

[3] Within the memorandum of law attached to his § 2255 petition, Petitioner refers to four exhibits: A (Dkt.# 96-1 at 4), B (Id. at 5), C (Id. at 6), and "Exhibit __" (no letter designation given)(Id. at 16). However, he attached only three exhibits, none of which are marked in any way to correlate with these letter designations, nor are they attached in the order in which they are referred to in the petition. Furthermore, petitioner's "Exhibit C," purportedly an August 10, 2006 statement made by co-defendant William Christian to unnamed "Agents," (Dkt.# 96-1 at 6) was not attached at all.

deficient for failing to interview or object to the evidence that was based on the testimony of William Christian, because it rendered counsel "unprepared and unable to impeach or effectively cross examine government witness [sic]." (Dkt.# 96-1 at 6).

A review of the record reveals that the undersigned issued a Report and Recommendation to deny petitioner's motion to suppress on April 20, 2007. (Dkt.# 33). On April 18 and April 25th, counsel filed two separate motions to appoint an expert (Dkt.# 31 and 34), asking the Court to approve the hiring of an investigator, because there were "at least 11 witnesses who need to be interviewed" and all of them were in the Youngstown and Steubenville, Ohio area, necessitating travel to those locations. On April 30, 2007, counsel filed a sealed motion for issuance of subpoenas and service upon nine witnesses. (Dkt.# 37). The Court granted petitioner's motion for an expert investigator on May 7, 2007. (Dkt.# 45). However, petitioner signed the plea agreement the same day. (Dkt.# 56). It is readily apparent that counsel never had the opportunity to "impeach or effectively cross examine" the Government's witnesses because the case never went to trial. Moreover, the only reason counsel could have 'failed to investigate" or interview the witnesses was because petitioner had already agreed to plead guilty, and therefore, further investigation was moot. Petitioner has failed to demonstrate that but for these alleged errors, the result of the proceeding would have been different. See Fields, 956 F.2d at 1297. Accordingly, this claim must fail.

As for petitioner's Ground Five (c) claim that counsel did not investigate potential defenses, a review of the record indicates this claim lacks merit. On March 22, 2007, counsel filed a motion to suppress, alleging that there was no probable cause for the search of the vehicle where the gun was found and the evidence should be suppressed because it was discovered incident to a warrantless search. (Dkt.# 22). He argued the motion at a hearing on April 3, 2007; (Dkt.# 26); filed an

additional brief in support of it on April 19, 2007 (Dkt.# 32); and filed objections to the Report and Recommendation denying the motion on May 2, 2007 (Dkt.# 40). Furthermore, he was continuing to vigorously investigate the facts of the case and prepare for trial, up until the time petitioner signed the plea agreement, as evidenced by the request for the investigator and issuance of subpoenas to witnesses, noted *supra.*

Again the Court must reject Petitioner's claim. First, petitioner only asserts that counsel failed to investigate and fails to identify what evidence his counsel would have discovered to develop a defense had counsel properly investigated. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (stating that a petitioner must explain what additional evidence would have been obtained from the additional investigation). Second, Petitioner failed to identify what his defense would have been and how counsel acted prejudicially in not developing the defense. See Strickland, 466 U.S. at 687. Therefore, Petitioner's claim must fail.

Petitioner's Ground Five (d) claim that counsel failed to reserve the right to appeal the District Court's adverse ruling on the suppression motion lacks merit and is unsupported by the record. Petitioner was well aware that the entry of his plea reserved only the issue of his ACC determination and its sentence for appeal. During his Rule 11 colloquy, he testified that he had gone over the plea agreement with counsel, who had answered any questions about it that he had. (Dkt.# 102 at 11). He denied that he had any other deals or side agreements with the Government, not contained within the plea agreement. (Id.). When counsel spoke at length, describing to the Court in great detail all the time spent with petitioner explaining the various provisions of the plea agreement, he did not object. (Id. at 13 - 15). He further testified that he understood all of the rights he was giving up by entering the plea, specifically addressing the waiver of appellate and post-

conviction relief rights which permitted only the appeal of a potential ACC determination and its sentence. (Id. at 19). He testified that he understood that if he went to trial, he could confront witnesses and move to suppress evidence against him. (Id. at 20). Further, he specifically denied that his plea was the result of any promise or inducement, other than those contained within the plea agreement. (Id. at 28). Petitioner knowingly waived the right to appeal his suppression issue when he entered his plea. As such, counsel had no basis on which to 'reserve the right" to appeal the issue and cannot be found ineffective for not doing so.

Petitioner's Ground Five(e) claim is that counsel was ineffective for failing to give proper advice as to the sentence he would receive. Petitioner alleges that "his lawyer told him a lie; and, in the absence of the lie, he would have plead not guilty and insisted on a trail [sic]." (Dkt.# 96-1 at 16). He contends that counsel told him that

> he had spent several hours with the government and more with the United States Probation Officer and worked out a better estimate of potential consequence for the petitioner to plead guilty before May 10, 2007. The possible sentence is 57 - 71 months, had he not plead guilty in a timely manner petitioner was told that he would not receive [sic] acceptance of responsibility, and that offer may be withdrawn. And if it is withdrawn petitioner will be tried on May 15, 2007, with a possibility of a 77 - 96 month sentence at trial[.]"

(Id. at 16 -17).

He contends that "(EXHIBIT   )" is proof of counsel's lie. (Dkt.# 96-1 at 16).[4]

The Court finds Petitioner's argument unpersuasive. Several Circuits of the United States Court of Appeals have found that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance

---

[4] Attached, although not labeled specifically as an exhibit in any manner, is a copy of a May 9, 2007 letter from counsel, explaining the Government's offer of a plea agreement and several different sentencing scenario possibilities. The undersigned presumes that this is the exhibit to which petitioner refers.

of counsel." Hughes v. United States, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006), cert. denied, 127 S.Ct. 1027 (2007); United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995). Furthermore, it has been noted that:

> [T]he sentencing consequences of guilty pleas (or, for that matter guilty verdicts) are extraordinarily difficult to predict. Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. Therefore, . . . a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great[.]

Hughes, 2007 WL 841940 at *5, quoting United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).

The May 9, 2007 letter from counsel that petitioner attaches as 'proof' that his lawyer "lied" to him about the length of his potential sentence clearly states, in pertinent part:

> . . . The United States has offered a plea agreement that must be accepted in a timely manner sufficiently in advance of trial or you may not receive acceptance of responsibility and the offer may be withdrawn. If it is withdrawn, you will be tried on May 15, 2007 unless the trial is continued for some unusual circumstance.
>
> There are advantages and disadvantages to the plea agreement.
>
> The advantage . . . is that a plea generally results in a two to three level reduction in base offense level and, therefore, in less actual incarceration than you would be subject to if convicted by trial instead of by plea.
>
> **Of course, if you are an armed career criminal, the above analysis is irrelevant as the statutory minimum is fifteen years** . . .
>
> **You should understand that prediction of your actual sentence is a complicated process that cannot be accomplished with any degree of certainty. No one can determine your exact sentence until after preparation of a presentence report, examination of that report, and resolution of objections by both sides to that report.** The sentence in federal cases is determined by base offense level and criminal history category. **Once again, no one can accurately predict the final sentence until after preparation of a presentence report and a sentencing hearing. However, I can provide a very rough, ballpark area guess.**
>
> I hope that you recall from our lengthy discussion of the process of a criminal prosecution that you, and only you, can decide whether or not to take a plea bargain. Only you suffer the consequences and repeat he benefits. I cannot and will not make the decision for you. My personal preference is irrelevant to your decision . . .
>
> The initial determinant of sentence is base offense level. In your case, it

appears that your base offense level is 24 if you are neither an armed career criminal or a career criminal.

**Further complicating the analysis, I was not able to acquire a good estimate of your criminal history category due to your poor memory and the state of N.C.I.C. printouts**.  I spent several hours with the government today and more with the United States Probation Officer and worked out a better estimate of potential consequences for you.  **You should be aware that no one can accurately and precisely estimate your Guideline range until after the preparation of a presentence report, the analysis thereof, the making of any objections, and the resolution of those objections** . . .

(Dkt.# 96-3 at 1- 2) (emphasis added).

It is apparent from the letter that counsel did not "lie" and that petitioner was repeatedly warned that an exact prediction of his sentence was impossible at that point, and that the ACC determination could subject him to a mandatory minimum fifteen-year sentence. It is also apparent that petitioner's own failure to provide full and complete information to counsel regarding his prior criminal history contributed to counsel's inability to provide an accurate sentence prediction.  As such, petitioner has no cause to complain that counsel's "ballpark area guess" was inaccurate.

All Petitioner has alleged is that his counsel may have given an inaccurate prediction regarding potential sentence length.  This claim lacks merit and is unsupported by the record. Petitioner has not alleged or established any other evidence required to make a cognizable claim for ineffective assistance of counsel.  Further, during the plea hearing, the Court informed Petitioner that the statutory mandatory minimum sentence for Count One of the indictment was fifteen years to life, if he were later determined to be an Armed Career Criminal, and no more than ten years if he were not, and Petitioner represented that he understood.  (Dkt.# 102 at 16 and 17).  Accordingly, assuming, *arguendo,* counsel did provide an inaccurate sentencing prediction, "any misinformation [defendant] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [defendant] was not prejudiced . . . [I]f the trial court properly informed

[defendant] of the potential sentence he faced he could not be prejudiced by any misinformation his counsel allegedly provided him."   United States v. Foster, 68 F.3d 86, 88 (4th cir. 1995).

Additionally, Petitioner responded affirmatively when asked whether he had gone over the plea agreement with counsel before signing it, and testified that counsel had answered all his question about it.  (Dkt.# 102 at 11).  He testified that he understood that the Court would not be able to determine the applicable sentence until a later date, after all sides received and had had an opportunity to review the PSR; the Court could take into account any relevant conduct when determining the sentence; the Court could enhance his sentence under § 924(e)(1) if it found he was an Armed Career Offender; and that the Court could vary from the Guideline and impose a sentence either more or less severe than the Guideline recommendation. (Id. at 18-19).  Moreover, during the Rule 11 colloquy, when counsel responded to the Court's inquiry as to whether he believe petitioner understood the waivers contained within his plea agreement, he stated:

> MR. HERNDON: Your Honor, I met with Mr. Taylor on May 9 in a lengthy proceeding.  I read each and every paragraph of the plea agreement to him in haec verba.  Not only did I read those to him, I explained each of the paragraphs to him in plain English.  This morning I met with him again in another lengthy meeting, I would say this morning's lasted an hour and the one on May 9 lasted closer to two hours.  Again, this morning I went over each paragraph with Mr. Taylor, including paragraphs 2, 10, and 11.  I also explained to him the Guidelines, how they were applicable to him.  I provided him copies thereof, as well as copies of the statutes. I have explained to him in great detail both paragraph 10 and 2 because implicit in the plea agreement, it should be apparent that there is going to be a conflict over whether or not the Armed Career Criminal proceeding applies to him.   And paragraphs 2 and 10 are very important to him in how that matter is going to be resolved and what happens if the resolution is favorable or unfavorable to him . . .
>
> As I went through the paragraphs, Mr. Taylor was an active participant.  By that, I mean he had questions.  He asked questions that were related to the facts of his particular case.  **He provided facts about his convictions and his history to me that were relevant to the plea agreement and the  determination of what might happen in terms of the argument that - - or the application of Armed Career Criminal** . . .
>
> Finally, it took some time, Mr. Taylor is used to the state court system

[rather] than the federal court system, to explain the Guidelines to him. He is not used to the uncertainty that we have in determining final sentence in the federal court system, **but he now understands that no one can predict for him the actual outcome of the case until the preparation of the presentence report and resolution of the objections to that**.

After both of the meetings, I came away confident that Mr. Taylor understood the plea agreement, that he understood paragraphs 2, 10 and 11 in particular, and **I was more confident than with most clients because paragraphs 2 and 10 are central to the resolution of this particular plea, that being a resolution of contested sentencing factors and the right to appeal unfavorable resolution of those factors. So those being central, I took more time than usual with those, those being central to Mr. Taylor's concerns. I made certain that he understood them**.

(Dkt.# 102 at 13 - 15) (emphasis added).

Petitioner's counsel was not ineffective in failing to accurately predict the sentence. Petitioner was made aware of the sentencing possibilities at the plea hearing, and he still entered his plea. Accordingly, Petitioner's claim is without merit.

2.    **Ground Six: Whether Counsel had a Conflict of Interest**.

The sum total of petitioner's argument in this regard is "[t]rial counsel's assistance fell below any form of standard of representation. Trial counsel conflict [sic] of interest[.]" (Dkt.# 91-1 at 3).

"The Sixth Amendment guarantees an accused the right to effective assistance of counsel, and an essential aspect of this right is a lawyer 'unhindered by conflicts of interest.'" See United States v. Nicholson, 475 F.3d 241, 248 (4th Cir. 2007) (citing Strickland v. Washington, supra and quoting Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir. 2001) (en banc), aff'd, 535 U.S. 162 (2002)). When a petitioner asserts an ineffective assistance of counsel claim based on a conflict of interest, the standard for such a claim is set forth in Cuyler v. Sullivan, 446 U.S. 335 (1980). Nicholson at 249. "To establish a conflict of interest resulted in ineffective assistance, '[m]ore than a mere possibility of conflict must be shown.'" Id. (quoting United States v. Tatum, 943 F.2d 370, 375 (4th

Cir. 1991)).  Instead, the petitioner must show "(1) that his lawyer was under an actual conflict of interest, and (2) that this conflict adversely affected his lawyer's performance."  <u>Id.</u> (citing <u>Cuyler v. Sullivan</u>, 446 U.S. at 348) (internal citations omitted).

To show an actual conflict of interest, the petitioner "must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action."  <u>Gilbert v. Moore</u>, 134 F.3d 642, 652 (4th Cir. 1998) (en banc) (internal quotations omitted).  Alternately, a conflict of interest exists when counsel is regarded as "account[ing] to two masters" or when he fails to act on behalf of one client because it would adversely affect another.  <u>United States v. Tatum</u>, 943 F.2d at 376.

Here, petitioner alleges, without elaborating in any way, that counsel had a conflict of interest.  He does not specify what the conflict was, or how or when it occurred.  He does not show that his lawyer was under an actual conflict of interest, nor does he explain how this alleged conflict adversely affected his lawyer's performance.

Habeas petitions must meet heightened pleading requirements.  <u>McFarland</u>, 512 U.S. at 856. The petitioner must come forward with some evidence that the claim might have merit.  <u>Nickerson</u>, 971 F.2d at 1136.  Allegations amounting to nothing more than conclusions provide no basis for an ineffective assistance of counsel claim. Here, Petitioner's claim is nothing more than a conclusory allegation which provide no specifics to form a basis for the Court to grant Petitioner's claim. Petitioner has not shown that his attorney made any error at all, let alone that counsel made an error so serious that he failed to function as his counsel under the Sixth Amendment.  He has not shown that the behavior was unreasonable or that he was prejudiced in any way.  This claim fails.

## IV.  <u>Recommendation</u>

For the reasons set forth in this opinion, the undersigned recommends that the Court enter

an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING this case with prejudice**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: February 24, 2011

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE